# United States Court of Appeals for the Federal Circuit

---

**ELECTRONIC COMMUNICATION TECHNOLOGIES, LLC,**
*Plaintiff-Appellant*

**v.**

**SHOPPERSCHOICE.COM, LLC,**
*Defendant-Appellee*

---

2019-1587

---

Appeal from the United States District Court for the Southern District of Florida in No. 9:16-cv-81677-KAM, Senior Judge Kenneth A. Marra.

---

Decided: May 14, 2020

---

ARTOUSH OHANIAN, I, OhanianIP, Austin, TX, for plaintiff-appellant.

DAVID K. FRIEDLAND, Friedland Vining, PA, Miami, FL, for defendant-appellee. Also represented by JAMES STEPAN, Law Offices of James A. Stepan, P.A., Hollywood, FL.

---

Before PROST, *Chief Judge*, DYK and WALLACH, *Circuit Judges*.

PROST, *Chief Judge*.

Electronic Communication Technologies, LLC ("ECT") sued ShoppersChoice.com, LLC ("ShoppersChoice"), alleging that ShoppersChoice infringed claim 11 of U.S. Patent No. 9,373,261 ("the '261 patent"). The district court granted ShoppersChoice's motion for judgment on the pleadings that claim 11 was invalid under 35 U.S.C. § 101.

ECT appeals. We have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1). For the reasons stated below, we affirm.

## BACKGROUND

The '261 patent is titled "Secure Notification Messaging with User Option to Communicate with Delivery or Pickup Representative." '261 patent title. Claim 11 recites:

11. An automated notification system, comprising:

one or more transceivers designed to communicate data;

one or more memories;

one or more processors; and

computer program code stored in the one or more memories and executed by the one or more processors, the computer program code comprising:

code that enables a first party associated with a personal communication device (PCD) to input or select authentication information for use in connection with a subsequent notification communication session involving advance notice of a delivery or pickup of a good or service at a stop location by a mobile thing (MT);

code that causes storage of the authentication information;

code that monitors location or travel information in connection with the MT;

code that causes initiation of the notification communication session to the PCD with the one or more transceivers, in advance of arrival of the MT at the stop location, based at least in part upon the location or travel information associated with the MT;

code that, during the notification communication session, provides the authentication information to the PCD that indicates to the first party that the notification communication session was initiated by an authorized source; and

code that, during the notification communication session, enables the first party to select whether or not to engage in a communication session with a second party having access to particulars of the pickup or delivery.

'261 patent claim 11.

ShoppersChoice filed a motion for judgment on the pleadings that claim 11 is ineligible under § 101, which the district court granted. The district court found that "claim 11 is directed to the abstract idea of providing advance notification of the pickup or delivery of a mobile thing." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, No. 16-81677-CIV-MARRA, 2019 U.S. Dist. LEXIS 10042, slip op. at 6 (S.D. Fla. Jan. 18, 2019) ("*District Court Opinion*"). The court explained "business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades, if not longer." *Id.* at 7 (quoting *Mobile Telecomms. Techs., LLC v. United Parcel Serv., Inc.*, 173 F. Supp. 3d 1324, 1331 (N.D. Ga. 2016), *aff'd*, 708 F. App'x 684 (Fed. Cir. 2018)).

The district court further concluded that claim 11 does not include an inventive concept. *Id.* at 10–11. The court reasoned that "[t]he claim recites generic computer components that can be configured to perform purely conventional computer functions." *Id.* at 11.

ECT appealed.

## DISCUSSION

Patent eligibility under § 101 is an issue of law that sometimes contains underlying issues of fact. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018). The Supreme Court has laid out a two-step framework for evaluating patent eligibility. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–73 (2012). First, we determine whether a patent claim is directed to an unpatentable law of nature, natural phenomena, or abstract idea. *Alice*, 573 U.S. at 217. If so, we then determine whether the claim nonetheless includes an "inventive concept" sufficient to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 72, 78).

## I

We begin our analysis with step one of the two-step framework. We agree with the district court that claim 11 of the '261 patent is directed to the abstract idea of "providing advance notification of the pickup or delivery of a mobile thing." *District Court Opinion*, at 6. Claim 11 recites conventional computer components and "computer program code" that, as both the district court explained in its opinion and ECT explained in its briefing,

> (1) enables a first party to input authentication information; (2) stores the authentication information; (3) monitors the location of a mobile things; (4) initiates notification to the first party in advance of arrival of the mobile thing based in part

on the location of the mobile thing; (5) provides the authentication information to the first party; and (6) enables the party to select whether or not to communicate with a second party having access to particulars of the pickup or delivery.

*District Court Opinion*, at 2; ECT's Opening Br. 4–5. Two of the six identified functions—monitoring the location of a mobile thing and notifying a party in advance of arrival of that mobile thing—amount to nothing more than the fundamental business practice of providing advance notification of the pickup or delivery of a mobile thing. As the district court correctly noted, "business practices designed to advise customers of the status of delivery of their goods have existed at least for several decades, if not longer." *Id.* at 7 (quoting *Mobile Telecomms. Techs.*, 173 F. Supp. 3d at 1331).

Although claim 11 also recites added measures that purport to increase security—namely, enabling a first party to input authentication information, storing the authentication information, and providing the authentication information along with the advance notice of arrival to help ensure the customer that the notice was initiated by an authorized source—those claimed functions are also abstract. As the patent specification explains, the "authentication information" can be essentially any information recognizable to the party being contacted, "for example but not limited to, any of the following: a logo, trademark, coat of arms, symbol, pre-defined symbol or text or numeric code that has been made or known to or selected by the party being contacted, specific sound or sounds or music, . . . a telephone number that can be called to verify the notification, . . . part of a credit card number, such as the last four digits, [or] an image of a signature, such as the signature of the notified party." '261 patent col. 61 ll. 42–55. Businesses have long been supplying customers with order numbers and recording customer information—such as the client's name, address, credit card number, and telephone

number—as well as including such information in subsequent communications with that particular customer.

Claims, like claim 11, that are directed to longstanding commercial practices do not pass step one of the two-part § 101 test. *See, e.g.*, *Alice*, 573 U.S. at 219–20 (concluding claims "drawn to the concept of intermediated settlement" were directed to an abstract idea at step one because intermediated settlement is "a longstanding commercial practice"); *Bilski v. Kappos*, 561 U.S. 593, 611 (2010) (concluding claims drawn to "the basic concept of hedging" were directed to an abstract idea because "[h]edging is a fundamental economic practice long prevalent in our system of commerce" (internal citations and quotation marks omitted)); *see also, e.g.*, *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) (concluding claims were directed to an abstract idea because the claimed "activity, i.e., organizing and accessing records through the creation of an index-searchable database, includes longstanding conduct that existed well before the advent of computers and the Internet"); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369–70 (Fed. Cir. 2015) (concluding claims related to tailoring advertisements according to the time of day were directed to an abstract idea because that practice had been "long-practiced in our society"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (concluding claims were directed to an abstract idea because the claims were "squarely about creating a contractual relationship—a 'transaction performance guaranty'—that is beyond question of ancient lineage" (quoting Willis D. Morgan, *The History and Economics of Suretyship*, 12 Cornell L.Q. 153 (1927))). In addition, the process of recording authentication information—such as the customer's name, address, and telephone number—and including that information in a subsequent communication with the customer is abstract not only because it is a longstanding commercial practice, but also because it amounts to nothing more than

gathering, storing, and transmitting information. *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (concluding claims relating to collecting, analyzing, and displaying information were directed to an abstract idea, even "when limited to particular content," because such limitation "does not change its character as information"). Indeed, including previously stored information in a subsequent communication is quite unlike the "improvement[s] in computer capabilities" that we have found eligible for patenting at step one. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016).

ECT's arguments are unpersuasive. For example, ECT argues that claim 11 of the '261 patent is not directed to an abstract idea because it is "unique" in that it "is directed toward and addresses solutions to minimize hacker's impacts when mimicking order conversations and shipment notification emails." *See, e.g.*, ECT's Opening Br. 12. ECT's argument fails. "We may assume that the techniques claimed are '[g]roundbreaking, innovative, or even brilliant,' but that is not enough for eligibility." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 591 (2013)). Thus, even taking as true that claim 11 is "unique," that alone is insufficient to confer patent eligibility. Moreover, the purported uniqueness of claim 11—i.e., how the claims purportedly increase security—is itself abstract for the reasons stated previously.

ECT also argues that claim 11 is patent eligible under § 101 due to three aspects of the patent's prosecution history: (1) that the application that ultimately became the '261 patent "sailed through" the United States Patent and Trademark Office ("USPTO") by receiving an allowance in the very first Office action; (2) that ECT "obtained the '261 patent with complete and total transparency"; and (3) that ECT requested the USPTO to "double-check" its work on § 101 after ECT received the notice of allowance, upon

which the USPTO reconfirmed its finding that the claims were patent eligible.  ECT Opening Br. 6–10, 12–15, 17.

ECT's argument is unavailing.  These specific details relating to the procedure of prosecution before the USPTO bear no relationship to the subject matter to which claim 11 is directed and do not negate the fact that claim 11 is directed to longstanding business practices.  Nor do ECT's purported diligence and good faith during patent prosecution before the USPTO in any way shield the patent's claims from Article III review for patent eligibility.

Accordingly, we conclude, as did the district court, that claim 11 is directed to an abstract idea.

## II

Next, we address step two of the framework and conclude that the claims do not include an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application.  Because claim 11 is specified at a high level of generality, is specified in functional terms, and merely invokes well-understood, routine, conventional components and activity to apply the abstract idea identified previously, *see, e.g.*, '261 patent claim 11; J.A. 576, 581–83, claim 11 fails at step two, *see, e.g.*, *Alice*, 573 U.S. at 225–26; *Mayo*, 566 U.S. at 73; *see also, e.g.*, *Elec. Power Grp.*, 830 F.3d at 1355 (concluding patent claims were ineligible under § 101 in part because "[n]othing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information").

ECT's arguments are unpersuasive.  ECT argues that "[i]n *Amdocs*, this court held a far shorter, far less enabled claim valid."  ECT's Opening Br. 17.  As an initial matter, patent eligibility turns on the content of the claims, not merely on the number of words recited in the claims.  In addition, just because a patent claim is enabled does not

mean that the claim is patent eligible—subject matter eligibility and enablement are separate inquiries, irrespective of any overlap between the two. In any event, this case is unlike *Amdocs*. There, "th[e] claim entail[ed] an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases)." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300 (Fed. Cir. 2016). Here, the claim only entails applying longstanding commercial practices using generic computer components and technology; such claims are ineligible under § 101. *See, e.g.*, *Alice*, 573 U.S. at 225–26; *Mayo*, 566 U.S. at 73.

Finally, ECT asserts in conclusory fashion that the district court should have engaged in claim construction before deciding claim 11's eligibility under § 101. ECT has not identified a single claim term that it believes requires construction before the eligibility of claim 11 can be decided, much less how this construction could affect the analysis. Under such circumstances, and on the basis of our review of claim 11, we conclude that the district court properly resolved patent eligibility at the pleadings stage of the proceedings. *See, e.g.*, *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (explaining that "we have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced," and concluding that "it was appropriate for the district court to determine that the [asserted] patents were ineligible under § 101 at the motion to dismiss stage" where the patentee "provided no proposed construction of any terms or proposed expert testimony that would change the § 101 analysis").

## CONCLUSION

We have considered ECT's remaining arguments and find them unpersuasive. In view of the foregoing, the

10   ELECTRONIC COMMUNICATION v. SHOPPERSCHOICE.COM, LLC

judgment of the United States District Court for the Southern District of Florida is affirmed.

**AFFIRMED**