NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ESIGNATURE SOFTWARE, LLC,**
*Plaintiff-Appellant*

**v.**

**ADOBE INC.,**
*Defendant-Appellee*

---

2023-1711

---

Appeal from the United States District Court for the Northern District of California in No. 3:22-cv-05962-JSC, Judge Jacqueline Scott Corley.

---

Decided: July 3, 2024

---

WILLIAM PETERSON RAMEY, III, Ramey LLP, Houston, TX, for plaintiff-appellant.

MICHAEL BERTA, Arnold & Porter Kaye Scholer LLP, San Francisco, CA, for defendant-appellee. Also represented by THOMAS T. CARMACK, Palo Alto, CA; NICHOLAS LEE, Los Angeles, CA; NICHOLAS M. NYEMAH, Washington, DC.

---

2                  ESIGNATURE SOFTWARE, LLC v. ADOBE INC.

Before PROST, SCHALL, and HUGHES, *Circuit Judges*.

PROST, *Circuit Judge*.

Esignature Software, LLC ("Esignature") sued Adobe Inc. ("Adobe") for infringing U.S. Patent No. 8,065,527 ("the '527 patent"). The district court held the '527 patent's claims ineligible for patenting under 35 U.S.C. § 101 and, as a result, granted Adobe's motion for judgment on the pleadings. Esignature appeals. We affirm.

BACKGROUND

I

The '527 patent is titled "System and Method for Embedding a Written Signature into a Secure Electronic Document." The parties agree that claim 1 of the '527 patent is representative for purposes of the § 101 eligibility analysis in this case. *See* Appellant's Br. 5; Appellee's Br. 3, 9. Claim 1 recites:

A method for embedding a written signature into a secure electronic document, comprising:

forming a placeholder electronic document containing content to be attested to by a signature;

selecting a signing individual from a signer list;

placing a signature tag into the placeholder electronic document at a selected signature location, wherein the signature tag is associated with the signing individual and defines the signature location within the placeholder electronic document for the signing individual to sign;

securing the placeholder electronic document to form the secure electronic document having content configured to be uneditable;

sizing an unsigned signature bounding box on a signature capture device based on a type of the

signature tag at the signature location, wherein the signature bounding box is displayed independently of a display of the secure electronic document; and

capturing a signature with the signature capture device within the signature bounding box as the signature is written by the signing individual, the signature capture device being configured to enable the signing individual to write the signature to be embedded into the secure electronic document at the signature location indicated by the signature tag to mimic a real world experience of signing paper documents.

'527 patent claim 1.

## II

Adobe moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), arguing that the '527 patent's claims are ineligible for patenting under § 101. Esignature opposed, and the district court heard oral argument on the motion.

The district court evaluated the eligibility of the '527 patent's claims under the two-step framework set forth in *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014). *See Esignature Software, LLC v. Adobe Inc.*, 656 F. Supp. 3d 1041, 1046–51 (N.D. Cal. 2023). In a well-reasoned opinion, it held the claims ineligible for patenting under § 101. *Id.* at 1051.

At *Alice* step one, the district court concluded that representative claim 1 is directed to a "method to apply a signature digitally, in a designated place, within a secure electronic document." *Id.* at 1047. As the court observed, claims directed to longstanding business practices are directed to an abstract idea at *Alice* step one, *see id.* at 1048 (citing *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1182 (Fed. Cir. 2020)), and the

'527 patent "itself recognizes that signatures have been used for centuries to notarize and authenticate documents," *id.* (cleaned up); *see* '527 patent col. 1 ll. 7–8. The court concluded that claim 1 is directed to an abstract idea because it "simply recite[s] that existing business practice with the benefit of generic computing technology." *Esignature*, 656 F. Supp. 3d at 1048 (cleaned up); *see also id.* ("Generic computer implementation of an abstract idea does not make an abstract idea any less abstract."); *id.* at 1049 ("The '527 patent's claims focus on an abstract idea for which computers are invoked merely as a tool. For example, if one deletes the word 'electronic' from [c]laim 1 . . . , the method description would be indistinguishable from the process of signing a paper document.").

At *Alice* step two, the district court considered whether claim 1 contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Id.* at 1050. The court found no such inventive concept. Rather, it determined that claim 1 simply recites the use of generic computer features to implement the underlying abstract idea. *Id.*; *see also id.* ("[T]he claims here provide little more to an age-old practice."); *id.* at 1051 ("[T]his patent does not invent much of anything, but purports to preempt all forms of digital signature capture.").

The district court thus concluded that the '527 patent's claims are ineligible for patenting under § 101. It accordingly granted Adobe's Rule 12(c) motion for judgment on the pleadings. *Id.*

Esignature timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

We review a district court's grant of judgment on the pleadings under the regional circuit's law. *E.g.*, *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1367 (Fed. Cir. 2017). The Ninth Circuit reviews such

decisions de novo and affirms if, assuming the truth of the allegations in the non-moving party's pleadings, the moving party is entitled to judgment as a matter of law. *See, e.g., Rubin v. United States*, 904 F.3d 1081, 1083 (9th Cir. 2018).

Patent eligibility under § 101 is a question of law that may involve underlying questions of fact. *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). We review the district court's ultimate conclusion on patent eligibility de novo. *Id.*

To evaluate patent eligibility under § 101, we apply the familiar *Alice* two-step framework. At step one, we determine whether the claim at issue is "directed to" an abstract idea. *See Alice*, 573 U.S. at 218. Under this directed-to inquiry, "we ask what the patent asserts to be the focus of the claimed advance over the prior art to determine whether the claim's character as a whole is directed to ineligible subject matter." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1359 (Fed. Cir. 2020) (cleaned up). If the claim is directed to an abstract idea at step one, we move to step two, "where we examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* (cleaned up). If the claim does not contain such an inventive concept at step two, it is ineligible for patenting.

Esignature makes several arguments as to why the district court's ineligibility conclusion was erroneous. None has merit.

Regarding step one, although Esignature agrees with the district court's articulation of what claim 1 is directed to—i.e., a "method to apply a signature digitally, in a designated place, within a secure electronic document"—it disputes that this articulation is an abstract idea for § 101 purposes. It argues that, because secure *electronic* documents were not *digitally* signed as claimed before the

'527 patent, the district court's articulation was not a longstanding business practice, and therefore not an abstract idea. *See* Appellant's Br. 12–13 ("There is no evidence . . . that the application of a digital signature to any form of document is a long-standing business practice or that electronic documents could receive handwritten signatures."); *id.* at 13 (arguing that the district court "ignore[d] the significant limitation that the claims are digital signatures on secure electronic documents"); *see also* Appellant's Reply Br. 1–2 ("These elements alone take the claimed invention from what people have been doing for centuries . . . .").

Esignature's argument misunderstands both the district court's analysis and governing case law. The district court did not conclude that applying *digital* signatures in an *electronic* document was, itself, a longstanding business practice. Nor did it need to. Instead, it concluded that applying signatures in designated places on documents was a longstanding business practice—and that claim 1, due to its purely functional and generic implementation, amounts to little more than saying: do that on a computer. *See Esignature*, 656 F. Supp. 3d at 1049 ("This is the 'do it on a computer flaw.'" (citing *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019))); *id.* at 1048–49. The district court's reasoning accords with our precedent. *See, e.g., Return Mail, Inc. v. USPS*, 868 F.3d 1350, 1368 (Fed. Cir. 2017) (concluding that claims were directed to an abstract idea at step one when they "simply recite[d] [an] existing business practice with the benefit of generic computing technology"), *rev'd and remanded on other grounds*, 587 U.S. 618 (2019); *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1314 (Fed. Cir. 2016) (concluding that claims were directed to an abstract idea at

step one when they "merely applie[d] a well-known idea using generic computers").[1]

Esignature does not meaningfully develop any argument that claim 1 is "directed to a specific improvement to computer functionality" or that it "reflects an inventive solution to any problem presented by" carrying out the longstanding business practice on a computer. *See In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016). For example, while Esignature stresses that "[n]o one has ever manually inserted signatures into electronic documents," Appellant's Reply Br. 4, to the extent this assertion is meant to show that claim 1 solved some technological *problem* of signing electronically (as opposed to just showing that signing electronically was not a "longstanding" business practice), both Esignature's representations before the district court and the '527 patent itself confirm that the claimed "signature capture device" is purely functional or generic. *See* J.A. 120–21 (colloquy with the district court, where Esignature confirmed that it is just "some sort of a capture device"); '527 patent col. 6 ll. 27–29 ("The signature capture device . . . can be any type of electronic signature capture device capable of communicating with a computer."). The signature capture device is thus "merely a conduit" for carrying out the longstanding business practice and is insufficient to render claim 1 eligible at step one. *See In re TLI Commc'ns*, 823 F.3d at 612.

At bottom, Esignature simply emphasizes the *electronic* aspects of claim 1. But, at least here, this emphasis shows only that the longstanding business practice

---

[1]    To the extent Esignature's argument is intended to show claim 1's purported novelty—i.e., that applying a signature digitally to an electronic document as claimed had never been done before—novelty alone "does not avoid the problem of abstractness." *See, e.g.*, *Simio*, 983 F.3d at 1364 (cleaned up).

happens on a computer—which hardly solves the claim's "do it on a computer" problem. *See Esignature*, 656 F. Supp. 3d at 1049 ("[I]f one deletes the word 'electronic' from [c]laim 1 . . . , the method description would be indistinguishable from the process of signing a paper document."). We see no error in the district court's step-one conclusion that claim 1 is directed to an abstract idea.

Regarding step two, Esignature faults the district court for not considering purportedly "inventive aspects" reflected in certain dependent claims—for example, facilitating remote signatures (claims 18 and 19), capturing a signature at the time a transaction occurs (claim 10), and saving the embedded signature in a secure electronic document (claim 9). *See* Appellant's Br. 17–18; Appellant's Reply Br. 6–7. Yet, as Adobe observes—and as Esignature does not dispute—Esignature never raised these arguments before the district court. Indeed, Esignature agreed before the district court that claim 1 was a representative claim. *See Esignature*, 656 F. Supp. 3d at 1045; J.A. 116. We will not consider these forfeited arguments for the first time on appeal. *See, e.g.*, *In re Google Tech. Holdings LLC*, 980 F.3d 858, 863 (Fed. Cir. 2020) ("We have regularly stated and applied the important principle that a position not presented in the tribunal under review will not be considered on appeal in the absence of exceptional circumstances.").

Finally, Esignature argues that the district court erred by not construing certain claim terms before holding the claims ineligible. Appellant's Br. 16 (identifying as terms needing construction: "editing module," "signer list module," "tagging module," "secure document signer module," and "signature capture module"). This argument is unpersuasive—at least because, aside from identifying these terms, Esignature "has not explained how it might benefit from any particular term's construction under an *Alice* § 101 analysis." *See Simio*, 983 F.3d at 1365. We therefore

see no error in the district court's not construing these terms before holding the claims ineligible.

## CONCLUSION

We have considered Esignature's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

## **AFFIRMED**